## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 06-9252-M-01 |
| | ) | |
| SLONE C. HAYES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

Defendant was charged in a single-count Information with unlawful possession of marijuana, a controlled substance in violation of 21 U.S.C. § 844. (Doc. 1.)  The Information alleged that the offense was conducted on Fort Riley, Kansas, a federal military installation in the District of Kansas, on or about May 21, 2006.  Defendant entered a plea of not guilty and consented to trial before a United States Magistrate Judge.  (Doc. 4, 5.)  The trial was held on January 11, 2007, at Fort Riley, Kansas.  The Government appeared through Special Assistant U.S. Attorney John W. Roberts;  Defendant appeared through appointed counsel, John Henderson, Jr., Assistant Federal Public Defender.

The Government called one witness, Detective Brenda Pendleton, and offered one exhibit, Government Ex. A, which was a plastic baggie with the

marijuana that was taken from the vehicle in which Defendant was a passenger. The exhibit was admitted and the Government rested.  Defendant did not call any witnesses and rested.

There was no rebuttal, and the Court heard closing arguments from counsel. The Court then took the matter under advisement.  The Court is now prepared to rule.

## FACTS

Officer Pendleton testified that on May 21, 2006, she was participating in a "War on Guns" exercise at Ft. Riley which involved checking all vehicles coming in and out of the fort for the presence of guns or narcotics.  As vehicles lined up at the gate, a canine sniff was initiated on every vehicle, and if there was a "hit" by the canine, a vehicle was pulled over to be searched.

Officer Pendleton was advised that the car in which Defendant was a passenger was pulled over after such a canine sniff resulted in "a hit."  She was not present when the canine search was instituted and did not see the dog "hit" on the vehicle.  When Officer Pendleton arrived on the scene at about 2:00 a.m., she found a four-door vehicle located in a lighted area near the gate with the doors standing open.  The passenger and driver had exited the vehicle, and were standing about twenty feet away from the vehicle near the guard shack.  Defendant was

2

patted down by Officer Pendleton and nothing was found in her pockets or on her person.  The driver was patted down by an MP and nothing was found on the driver either.  The driver (Dean) indicated that the car belonged to his sister.

Officer Pendleton did not seek consent to search the vehicle since she believed that the signs on the entry road to the post notified everyone that their vehicle was subject to search and since she had been told by the MP's that the canine had "hit" on this vehicle which she believed was probable cause to conduct the search.

The officer began her search in the front passenger area of the vehicle where she noted the presence of a green/brown dried leafy substance both on the seat and on the top of floorboard mat in the floor area.  She then moved to the driver side of the vehicle where she found additional bits of the substance.  She checked the console for any drug paraphernalia (and found none) and then moved to the rear seating area.

There were pop cans, trash bags and other items lying on the back seat and back floor area.  The officer described the rear area as kind of dirty, but not too bad.  As she conducted her search, she would pick up an item, lightly shake it and search each item separately.  Any material that was collected was placed in one pile.  In the rear passenger side of the vehicle, the officer located a light colored

blue shirt lying on the back seat.  The shirt appeared to be "somewhat folded"

although not very neatly.  When the officer picked up and lightly shook the blue

shirt, some green leafy substance fell out onto the seat.  It appeared to the officer

that the substance was "inside" the folded shirt rather than merely lying on top of

the shirt.  She surmised that it had to have been place inside the shirt.  At that time

she yelled over to the passenger and driver who were standing apart from the

vehicle and asked who owned the blue shirt.  Defendant indicated that the shirt was

hers and later said that she had it so she could change clothes if she got hot and

sweaty at the club on post.  The officer placed the substances from the shirt into the

evidence baggie along with other material that had been collected during the

search.  The officer continued her search and found no further substances in the

rear floor area either on the passenger or driver side.

    All of the substances collected during the search of the vehicle were kept in

a single evidence baggie which was admitted into evidence without objection. The

substances collected were field tested by Officer Pendleton by picking out of the

evidence baggie one or two small leaves with a set of tweezers.  These tested

positive for the presence of THC – marijuana.  None of the substances from the

baggie were ever sent to a laboratory for further testing or verification.  At trial,

Officer Pendleton identified one good-sized piece of the substance in the evidence

baggie as having come from the blue shirt, and indicated that there had also been some smaller leaves, but no seeds, on the shirt.

Officer Pendleton indicated that she did not advise Defendant of her right to remain silent prior to asking about ownership of the shirt. She further testified that Defendant and the driver were not free to leave the area until they were given the 1805 ticket form stating the charges.

## DISCUSSION

Defendant does not contest the search of the vehicle. However, Defendant did move to suppress the statements made by Defendant in response to Officer Pendleton's inquiry as to who owned the blue shirt. Defendant argued that the officer's questions to Defendant about ownership of the shirt were made while Defendant was in custody and without the warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As such, Defendant argued that her answer to the officer's questions should be suppressed.

There are two requirements for <u>Miranda</u> to apply: the defendant must be "in custody" and there must be "an interrogation." <u>U.S. v. Hbaiu</u>, 202 F. Supp.2d 1177, 1185 (D. Kan. 2002) (*citing* <u>U.S. v. Perdue</u>, 8 F.3d 1485, 1463, 1466 (10th Cir. 1993)). As the court noted in <u>Hbaiu</u>, a person is in custody when his freedom has been curtailed to a degree associated with a formal arrest, but a suspect can be

in custody for <u>Miranda</u> purposes before he has been formally arrested in the Fourth

Amendment sense.  *Id.*  The court in <u>Hbaiu</u> found that the defendant was in

custody for <u>Miranda</u> purposes when he asked for an attorney after a drug dog "hit"

on his automobile and before the officers conducting the search found any drugs:

> at the time Hbaiu invoked his right to counsel, he was
> aware that the canine sniff had indicated the presence of
> drugs in the trailer.  At such a juncture, a reasonable
> person might consider themselves under arrest.

*Id.* at 1187.  The same is true in this case.  Defendant had been removed from the

automobile after the canine sniff took place, had been patted down by the officer,

and was admittedly not free to leave the area.  While she had not yet been given the

1805 form citing a criminal violation, the circumstances are such that a reasonable

person in her position would have believed that their freedom had been curtailed in

a manner certainly approaching arrest.[1]

For <u>Miranda</u> to apply, there must also be an interrogation.  While not all

statements obtained by law enforcement after a person had been taken in custody

---

[1] While the Tenth Circuit has applied a somewhat different test concerning the issue
of "custody" in cases involving routine border searches, *see e.g.*, <u>U.S. v. Hudson</u>, 210 F.3d
1184, 1192 (2000), this case does not justify such a consideration.  While this search and
resulting questions were part of a specific program searching for guns and narcotics, the
questions asked in this case are not the routine questions asked during border search, such
as vehicle ownership, cargo, destination, and travel plans.  Instead, the question at issue was
specifically asked only <u>after</u> supposedly controlled substances were discovered "in" the shirt
and the only reason for asking that question was to determine ownership of the shirt and thus,
possession of the controlled substances.

are to be considered the product of interrogation, <u>Miranda</u> refers not only to express police questioning, but also to practices that "police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 1187 (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).  In this case, there is a specific question directed to both the driver and the passenger pertaining to the ownership of the shirt in which the officer had already found what she believed to be unlawful controlled substances.  Clearly the officer knew that this question was likely to elicit an incriminating response from one of the two individuals in custody.

For the above reasons, the Court concludes that Defendant was in custody for purpose of <u>Miranda</u> at the time she was questioned about ownership of the shirt, and that the questions directed to her were an interrogation designed to establish ownership of the shirt, and therefore possession of the controlled substances found "in" the shirt.  Because Defendant was not given the required <u>Miranda</u> warnings prior to her questioning, Defendant's motion to suppress is granted.  The remedy is to suppress any statement given in violation of the rules and to hold that any such statement cannot be used in the Government's case in chief.  *See* <u>U.S. v. Bautista</u>, 145 F.3d 1140, 1147-48 (10th Cir. 1998) (*citing* <u>Miranda</u>, 384 U.S. at 479).  Therefore, the Court will not consider the statement

7

made by Defendant concerning ownership of the shirt found in the automobile.

The Government's entire opening and closing argument was based on the proposition that Defendant possessed the marijuana that was found "in" her shirt. Without Officer Pendleton's recitation of Defendant's statement concerning ownership of the shirt, there is not sufficient evidence to establish, beyond a reasonable doubt, that Defendant was in possession of any of the controlled substances found in the automobile.[2]   While some of the substances were found on the passenger side of the automobile where Defendant was riding at the time of the stop, none was found on her person, and she did not own the automobile.  Without the proof of ownership of the shirt, this is simply not sufficient evidence to establish that Defendant, as opposed to the driver or owner of the automobile, possessed the substances found during the search.

IT IS THEREFORE ORDERED that Defendant, Slone C. Hays, is found not

---

[2] The Court does therefore not have to decide whether the Government has produced sufficient evidence to show that the specific substances which were allegedly "in" the shirt which belonged to Defendant were marijuana.  Since all of the substances found <u>anywhere</u> in the automobile were placed in one evidence baggie, and only two leaves were tested to determine whether they were controlled substances, there appears to be a break in the chain of evidence linking what substances were allegedly possessed by whom.  This is particularly true since Officer Pendleton clearly identified the largest piece of the substance still in the baggie as having come from the shirt and she admitted that she did <u>not</u> test that particular substance.

guilty of the charges in the Information in this case.

Dated at Wichita, Kansas, this 18th day of December, 2007.


        s/  Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge